1

2

3

4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 15, 2025

SEAN F. McAVOY, CLERK

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

| | |
|---|---|
| JOAN GUERCIA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>AFFINITY INSURANCE SERVICES INC., AIS AFFINITY INSURANCE AGENCY INC., NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>     Defendants. | No.  4:24-CV-05088-MKD<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE<br><br>**ECF Nos. 18, 19** |

14

15

16

17

18

19

20

Before the Court is Defendants' Motion to Dismiss for Failure to State a

Claim, ECF No. 18, and related Request for Judicial Notice, ECF No. 19.  On

January 6, 2025, the Court held a hearing on these motions.  Brittany Scott and

Patrick Moore appeared on behalf of Plaintiff.  Lauren Rainwater and Caitlyn

Cowan appeared on behalf of Defendants.  The Court has reviewed the briefing

and the record and is fully informed.  The Court grants Defendants' Motion to

ORDER - 1

Dismiss for Failure to State a Claim, ECF No. 18, and grants in part Defendants' Request for Judicial Notice, ECF No. 19.

## BACKGROUND

### A. Factual and Procedural Background

On July 24, 2024, Plaintiff Joan Guercia brought a class action suit against Defendants Aon Affinity, d/b/a Aon Affinity Insurance Services, Inc. (including affiliates Affinity Insurance Services, Inc. and AIS Affinity Insurance Agency, Inc.) (collectively, "Aon Affinity" or "Aon") and Defendant Nationwide Mutual Insurance Company ("Nationwide"). ECF No. 1 at 2. Defendant Nationwide underwrites travel insurance products and authorizes Aon to sell its travel insurance products to Washington consumers. *Id.* at 5 ¶ 15. Defendant Aon Affinity Insurance Services, Inc. directs the marketing and sale of insurance policies through its subsidiaries. *Id.* at 4 ¶ 11.

Plaintiff's Complaint alleges that she booked two cruises with Princess Cruises ("Princess") via their website princess.com on or about June 8, 2023, and November 9, 2023. *Id.* at 14 ¶ 40. During the checkout process, Plaintiff purchased the insurance offered by Defendants. *Id.* This was the only insurance option presented to Plaintiff. *Id.* at 14 ¶ 42. Plaintiff claims that at the time she accepted this insurance, she did not know that she was being charged for "both an insurance premium and a mandatory fee that Defendants contend was for

1    assistance and other non-insurance services but that was, in effect, an unlawful

2    agent's fee or unauthorized premium." *Id.* at 14 ¶ 43. Plaintiff "believed that the

3    amount she paid Defendants was for the insurance only." *Id.* at 15 ¶ 45. Plaintiff

4    asserts that she "would have paid less than she did if Defendants had complied

5    with Washington law and charged her only an approved premium, rather than

6    unfairly, unlawfully, and deceptively including undisclosed additional fee or fees

7    in the cost of the insurance." *Id.* at 15 ¶ 46. Plaintiff also asserts, she "likely

8    would not have purchased insurance from Defendants if she had doubts about their

9    integrity and reliability, and she would have had such doubts if Defendants had

10   fully and fairly disclosed the material information referenced in th[e] Complaint."

11   *Id.* at 15-16 ¶ 47.

12        In support of her claims, Plaintiff details the checkout process on

13   princess.com, and includes three screenshots from the checkout process. *See id.* at

14   8-11 ¶¶ 28-33. Plaintiff alleges "[o]n the princess.com checkout screen, the

15   purchaser has the option to check a box to insure the reservation for an additional

16   fee." *Id.* at 8 ¶ 28. Plaintiff provides a screenshot of the checkout page and states:

17            Within this offer on a third-party checkout page, as with all pages where
             Defendants offers the Products, Defendants do not identify assistance
18           benefits, indicate that the assistance fee is for separate, non-insurance
             services, do not identify any fee, price, or charge for any such assistance
19           service or benefit that is separate from the premium, and provide the
             consumer no means for purchasing the offered insurance policy without
20           paying the assistance fee.

ORDER - 3

*Id.* at 8-9 ¶¶ 28-29.

According to Plaintiff, if consumers continue scrolling down the webpage, the services included in the policy are listed, but "[t]he 24/7 Support is not disclosed as a noninsurance service and the amount charged for any noninsurance services is not listed." *Id.* at 9 ¶¶ 30-31. If consumers scroll further, however, "that page discloses that the 24/7 Worldwide Travel Assistance Service is a noninsurance service which is included in the cost of Defendants' offered insurance services, but does not disclose how much Defendants are charging for them or give consumers the option not to purchase the additional assistance services." *Id.* at 9-11 ¶ 32.

Plaintiff brings claims for violations of Washington's Consumer Protection Act ("CPA"), RCW 19.86.010 *et seq.,* a common law breach of contract claim, and a common law breach of the duty of good faith. *Id.* at 20-25 ¶¶ 58-84. Plaintiff seeks damages, restitution, injunctive relief, *id.* at 25, and class certification for "all Washington residents who purchased travel insurance from Defendants during the Class period who were charged a fee for the supposed assistance services or benefits included with Nationwide's travel insurance contracts on top of the applicable insurance premium rate Defendants were authorized to charge for their travel insurance . . . ." *Id.* at 16 ¶ 48.

On September 16, 2024, Defendants filed a Motion to Dismiss for Failure to State a Claim, ECF No. 18, and a related Request for Judicial Notice, ECF No. 19. Plaintiff responded, ECF Nos. 24, 25, and Defendants replied, ECF Nos. 26, 27.

**B. Regulatory Settlement Between the Insurance Commissioner and Nationwide**

In 2014, several state departments of insurance began investigating the travel insurance industry, including Nationwide. ECF No. 19-5 at 2 ¶ A.2. Following a three-year investigation, Nationwide entered into a Regulatory Settlement Agreement ("RSA") with participating state departments of insurance. *See id.* On or about January 25, 2018, the Washington State Office of the Insurance Commissioner adopted, agreed to, and approved the RSA. *See* ECF No. 19-6.

Under the terms of the RSA:

> Pursuant to the filing and timing provisions specified in Section C (3) above, and where prohibited by law in a Participating State, Company agrees not to combine and package the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance in its rate filings and in the sale of its Travel Insurance to consumers, and will contractually prohibit its Distribution Participants from combining and packaging the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance in the sale of its Travel Insurance to consumers. Pursuant to the filing and timing provisions specified in Section C (3) above, and where combining and packaging the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance is not prohibited by law in a Participating State, Company agrees that it will provide all disclosures in connection with the sale of the combined and packaged product that are required by Insurance Law in a Participating State.

ECF No. 19-5 at 18-19 ¶ 25.

ORDER - 5

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007)) . In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly,* 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555.

**DISCUSSION**

Defendants ask the Court to take judicial notice of or incorporate by reference several documents in support of their dismissal motion. ECF No. 19. Defendants also move to dismiss Plaintiff's Complaint on the following grounds: (1) the CPA exception in RCW 19.86 .170 applies here, (2) travel assistance services are not insurance, (3) the statutes cited by Plaintiff do not give rise to a per se CPA claim; (4) Plaintiff has not alleged a per se CPA violation of WAC 284-30-

750, (5) Plaintiff has not plausibly alleged a common law CPA claim, and (6) Plaintiff has not plausibly alleged a claim for breach of the duty of good faith. ECF No. 18 at 13-25. Alternatively, Defendants ask the Court to dismiss the Complaint under the Primary Jurisdiction Doctrine. *Id.* at 25-26. Lastly, Defendants seek to limit Plaintiff's claims to the Princess Vacation Protection plan she purchased. *Id.* at 26.

### A. Judicial Notice and Incorporation by Reference

Defendants ask the Court to take judicial notice of and/or incorporate by reference screenshots and/or documents publicly available through links on non-party Princess's website (Exhibits A-D); a copy of the RSA, which is publicly available on the website of the Missouri Department of Insurance (Exhibit E); and the Washington Insurance Commissioner's signature page for the RSA (Exhibit F). ECF No. 19 at 4.

When faced with a Rule 12(b)(b) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted); *see also King v. PennyMac Loan Servs., LLC*, No. 24-CV-5002, 2024 WL 2064056, at *4 n.1 (E.D. Wash. May 8, 2024) ("At the Fed. R. Civ. P. 12(b)(6) stage, '[a] court may . . . consider certain materials—documents attached to the complaint, documents incorporated by

reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.'") (quoting *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)).

### 1. *Judicial Notice*

Plaintiff asserts that taking judicial notice of the exhibits is not appropriate because they are not authenticated, and Defendants have not provided evidence Exhibit F, the Washington signature page to the RSA, is publicly available. ECF No. 25 at 7. Plaintiff also asserts that judicial notice of Exhibits A-D, the Princess website documents, is not appropriate because private corporate websites cannot be trusted to be accurate. ECF No. 25 at 8-9.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Exhibit E (the RSA) is publicly available. "There is a presumption that public records are authentic and trustworthy." *Bell v. City of Spokane*, No. 21-CV-146, 2021 WL 3891068, at *2 (E.D. Wash. Aug. 31, 2021) (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of federal and state court records)). Plaintiff argues that Exhibit F (the Washington

signature page to the RSA) is not publicly available because Defendants failed to provide a link to the document in their request for judicial notice, but she acknowledged during the hearing that she had no reason to challenge its reliability. Thus, the Court takes judicial Notice of Exhibits E and F.

Exhibits A-D are printouts from Princess's website. Courts within the Ninth Circuit often decline to take judicial notice of private corporate websites due to their reliability. *See, e.g.*, *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1147 n.3 (W.D. Wash. 2017) ("Although a court may consider materials that are properly the subject of judicial notice under Federal Rule of Evidence 201 on a motion to dismiss. . . pages from a party's website generally do not meet those standards . . . .") (citations omitted); *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015) ("[P]rivate corporate websites, particularly when describing their own business, generally are not the sorts of sources whose accuracy cannot reasonably be questioned.") (citation and quotation marks omitted). Again, however, Plaintiff acknowledged during oral argument that she had no reason to challenge the reliability of the exhibits submitted for the Court's consideration by Defendants. Therefore, the Court will also take judicial notice of Exhibits A-D.

  *2. Incorporation by Reference*

1    Plaintiff asserts that "Defendants improperly rely on the Princess vacation

2    protection webpages to dispute Plaintiff's well-pleaded facts" and that "[n]one of

3    the documents Defendants seek to incorporate by reference are referenced

4    'extensively' in the Complaint." ECF No. 25 at 9-11. Plaintiff also asserts that

5    Defendants are improperly trying to incorporate by reference these exhibits to

6    prove affirmative defenses. ECF No. 25 at 10.

7    "[I]ncorporation-by-reference is a judicially created doctrine that treats

8    certain documents as though they are part of the complaint itself. The doctrine

9    prevents plaintiffs from selecting only portions of documents that support their

10   claims, while omitting portions of those very documents that weaken—or doom—

11   their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1102 (9th Cir.

12   2018) (citation omitted).

13   Plaintiff's claims revolve around the checkout process on the Princess

14   website. Her Complaint repeatedly references the Princess website and even

15   includes several screenshots of the website. *See* ECF No. 1. The webpages

16   Defendants seek to incorporate by reference are accessible via links shown in these

17   screenshots. *See* ECF No. 27 at 4-6. Preventing Defendants from supplying the

18   webpages as a whole would "allow for misleading argumentation, in which

19   Plaintiff can cherry-pick . . . terms alleged in the Complaint and preclude

20   Defendant[s] from correcting the record in response." *Sanchez v. Navy Fed. Credit*

*Union*, No. EDCV23285, 2023 WL 6370235, at *4 (C.D. Cal. Aug. 14, 2023).

Nor is the Court "required to accept as true conclusory allegations which are

contradicted by documents referred to in the complaint." *Steckman v. Hart*

*Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Plaintiff also argues that Defendants may not introduce documents to

establish affirmative defenses. Specifically, Plaintiff asserts that Defendants

cannot introduce Exhibits A-D "to prove Plaintiff could not be deceived by the

advertisements in the checkout flow" or Exhibits E-F "to prove that Plaintiff's

allegations fall under the RCW 19.86.170 exemption." ECF No. 25 at 10.

Plaintiff's CPA claims require a showing that a reasonable person would

have been misled or deceived by the Princess Vacation Protection plan. *See Panag*

*v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 894-95 (Wash. 2009) (citations

omitted). Whether a reasonable person would have been deceived requires

viewing the webpages as a whole. *See Khoja*, 899 F.3d at 1002 ("[E]ven though

the complaint did not 'allege or describe the contents of the surrounding pages,' it

was proper to incorporate them because the claim necessarily depended on them.")

(citations omitted). Thus, the introduction of Exhibits A-D by Defendants is

proper.

The RCW 19.86.170 exemption is considered an affirmative defense. *See*

*Harris v. U.S. BankCorp*, No. 19-CV-00291, 2019 WL 5536402, at *4 (W.D.

Wash. Oct. 25, 2019).  Thus, the Court does not consider Exhibits E (the RSA) and F (Washington's approval of the RSA), which support the application of this exemption, to be incorporated by reference.  *See Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint.").  However, as mentioned above, the Court takes judicial notice of those exhibits.

In conclusion, the Court takes judicial notice of Exhibits A-F and alternatively finds that Exhibits A-D are incorporated by refence into Plaintiff's Complaint.

## B. Whether the CPA Exception in RCW 19.86.170 Applies

Defendants assert that the RSA permits the bundling of travel insurance with non-insurance assistance services in Washington and that "[t]he Washington Insurance Commissioner's approval of the RSA constitutes an affirmative act, and accordingly, the CPA exemption in RCW 19.86.170 applies."  ECF No. 18 at 13-14.

Under RCW 19.86.170, the CPA does not "apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state."  "RCW 19.86.170 does not exempt actions or transactions merely because they are regulated generally.  The exemption applies only if the particular practice found to be unfair or deceptive is specifically

permitted, prohibited or regulated." *Vogt v. Seattle-First Nat. Bank*, 817 P.2d

1364, 1370 (Wash. 1991). The agency must take an "overt affirmative action

specifically to permit the actions or transactions engaged in." *In re Real Est.*

*Brokerage Antitrust Litig.*, 622 P.2d 1185, 1187 (Wash. 1980).

Here, the Court has taken judicial notice of the RSA. Under the terms of the

RSA, where prohibited by state law, Nationwide:

> [A]grees not to combine and package the cost of Assistance Services or Travel
> Cancellation Fee Waivers with the cost of Travel Insurance in its rate filings
> and in the sale of its Travel Insurance to consumers, and will contractually
> prohibit its Distribution Participants from combining and packaging the cost of
> Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel
> Insurance in the sale of its Travel Insurance to consumers.

ECF No. 19-5 at 18-19 ¶ 25. In states "where combining and packaging the cost of

Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel

Insurance is not prohibited by law . . . [Nationwide] agrees that it will provide all

disclosures in connection with the sale of the combined and packaged product that

are required by [law]." *Id.* at 19 ¶ 25. The Washington Insurance Commissioner

has affirmatively approved the RSA. *See* ECF No. 19-6.

Plaintiff argues: (1) RCW 19.86.170 is a fact-specific inquiry and thus it is

not appropriate to consider it on a motion to dismiss, and (2) Defendants do not

argue with specificity how the Washington Insurance Code "*specifically permits*

the combination of travel insurance with non-insurance travel services or

*specifically permits* any specific disclosure." ECF No. 24 at 9-10. Plaintiff cites to

ORDER - 13

*Harris v. U.S. BankCorp*, No. 19-CV-291, 2019 WL 5536402, at *1 (W.D. Wash. Oct. 25, 2019), in which plaintiffs brought an action against KeyCorp for refusing to honor their bonds.  KeyCorp argued that the RCW 19.86.170 exception "applie[d] to the allegedly unfair business practice in th[at] case because the National Bank Act [("NBA")], 12 U.S.C. § 21 et seq., and the Office of the Comptroller of the Currency ("OCC") regulate unfair and deceptive practices by national banks."  *Id.* at *4.  The court found the KeyCorp failed to explain, with the required specificity, how the NBA, or OCC regulation, permitted or regulated the alleged practice.  *Id.*

In contrast to *Harris*, the RSA is a specific agreement that has been approved by the Washington Insurance Commissioner and which allows "combining and packaging the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance" where not prohibited if the appropriate disclosures are made.  ECF No. 19-5 at 19 ¶ 25.  WAC 284-17-011 sets forth the disclosures that must be made as part of the sale of insurance in Washington.  Under WAC 284-17-011(1), "[a] person must not sell, solicit, or negotiate travel insurance in this state unless that person is licensed as an insurance producer[.]"  Further, the name and contact information of the licensed producer be disclosed to customers.  WAC 284-17-011(4)(a).  Here, Plaintiff alleges that AON is the insurance producer. ECF No. 1 at 6 ¶ 22.  AON's name and contact

1    information were disclosed to consumers who purchased the Princess Vacation

2    Protection plan.  *See* ECF No. 19-4 at 2, 4, 24.  Nor does Plaintiff allege a violation

3    of WAC 284-17-011.

4        Lastly, as detailed in this Order, Plaintiff has not provided any authority to

5    indicate that Washington law prohibits combining travel insurance with non-

6    insurance travel services.

7        The Court finds that the CPA exemption in RCW 19.86.170 applies.

8    **C. Whether Travel Assistance Services Are Insurance**

9        Defendants assert that travel-related assistance services included in the

10    Princess Vacation Protection plan are not insurance and thus are not subject to the

11    Insurance Code provisions or regulations on which Plaintiff relies.  ECF No. 18 at

12    14-15.  Plaintiff responds that Defendants cannot simply characterize these fees as

13    "non-insurance" and that even if they could be characterized as such, they are still

14    improperly bundled with the insurance premium.  ECF No. 24 at 13.

15        RCW 48.01.250(2) states, "[t]ravel . . . related products or assistance . . .

16    shall not be considered to be insurance for the purposes of Title 48 RCW."  The

17    statute defines travel related products or assistance to include "travel and touring

18    service, theft or reward service, map service, towing service, emergency road

19    service."  *Id.*

20        Here, the Princess Vacation Protection plan's "assistance services" include:

ORDER - 15

- Inoculation information

- Travel information including visa/passport requirements

- Lost passport/travel documents assistance

- Embassy or Consulate Referral

- Currency exchange rates

- Worldwide public holiday information

- Lost baggage search; stolen luggage replacement assistance

- Emergency cash transfer assistance

- Emergency telephone interpretation assistance

- Urgent message relay to family, friends, or business associates

- Legal referrals/bail bond assistance

- Rental Vehicle Return

- ATM locator

- Up-to-the-minute information on local medical advisories, epidemics, required immunizations and available preventative measures

- Emergency return travel arrangements

- Claims Assistance Services

ECF No. 19-4 at 28. These are the type of travel related products or assistance governed by RCW 48.01.250(2) and are not insurance.

ORDER - 16

Plaintiff also argues, without citation, if the fees were not insurance they would meet the following criteria: "(a) would be clearly distinguished from the insurance premium at the point of sale prior to purchase, (b) would be optional, and (c) would be based on the costs of the assistance service and the demand for such services rather than correlated to underwriting risks." ECF No. 24 at 13. But RCW 48.01.250(2) includes no such criteria.

Finally, Plaintiff argues that even if the travel assistance fees could be characterized as non-insurance "this does nothing to weaken Plaintiff's allegations that the fees are improperly bundled with the insurance premium." ECF No. 24 at 13. However, if the fees are not insurance, then it is not necessary for them to be approved by the Washington Department of Insurance and, as detailed in this Order, Washington law does not prohibit the bundling of insurance and non-insurance services.

The Court finds that the Princess Vacation Protection plan's "assistance services" are not insurance.

## D. Whether The Statutes Cited by Plaintiff Give Rise to a Per Se CPA Claim

Defendants assert that Plaintiff has not alleged a violation of RCW ch. 48.30, which declares certain insurance practices to be "unfair." ECF No. 18 at 15. Instead, Plaintiff alleges violations of RCW 48.17.270, 48.19.040, and 48.18.180, which do not "involve conduct declared by the Legislature to be unfair." *Id.*

Defendants further assert that even if these statutes qualified as per se CPA violations, Plaintiff has not plausibly alleged a violation. *Id.* at 15-16. Defendants also argue that "[t]he only statute or regulation cited by Plaintiff involving an 'unfair' insurance practice is WAC 284-30-750[]" and that Plaintiff has not alleged a violation of this regulation. ECF No. 18 at 17.

For a CPA violation, a plaintiff must establish: "(1) an unfair or deceptive act or practice occurred, (2) the act or practice occurred in the conduct of trade or commerce, (3) the act or practice impacted the public interest, (4) the plaintiff suffered an injury to business or property, and (5) the plaintiff can demonstrate a causal link between the unfair or deceptive act or practice and the injury." *Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 228 P.3d 1260, 1269 (Wash. 2010) (citation omitted). An unfair or deceptive trade practice may be established by showing that the alleged act constitutes a per se unfair trade practice, including an unfair claims settlement practice under WAC 284-30-330. *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 792 P.2d 520, 539 (Wash. 1990); *see also Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 283-84 (Wash. 2002) (citing *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997)).

Plaintiff alleges violations of WAC 284-30-750 and RCW 48.17.270, 48.19.040, and 48.18.180. Specifically, Plaintiff alleges Defendants did not obtain

ORDER - 18

approval for their insurance rates or clearly identifying the rates in violation of RCW 48.19.040 and RCW 48.18.180, and Defendants charged fees in violation of RCW 48.17.270 and WAC 284-30-750. ECF No. 1 at 6-7 ¶¶ 21-22. Violations of RCW 48.17.270, 48.19.040 and 48.18.180 do not constitute a per se unfair trade practice, nor has Plaintiff alleged violations of these statutes or WAC 284-30-750.[1]

    *1. WAC 284-30-750*

    Defendants assert that WAC 284-30-750 is not applicable, as Plaintiff does not allege that she was charged a fee for the assistance services in excess of the usual amount charged to similarly situated consumers. ECF No. 18 at 17-18.

    This regulation states:

> It shall be an unfair practice for any insurance producer . . . providing services in connection with the procurement of insurance to charge a fee in excess of the usual commission which would be paid to an insurance producer . . . without having advised the insured or prospective insured, in writing, in advance of the rendering of services, that there will be a charge and its amount or the basis on which such charge will be determined.

WAC 284-30-750.

---

[1] The Court also notes that Nationwide is not an insurance producer, therefore, RCW 48.17.270 and WAC 284-30-750 do not apply to it. *See* RCW 48.17.010(6)-(7); RCW 48.01.050. Conversely, Aon is not an insurer and thus RCW 48.19.040 does not apply to it.

ORDER - 19

Plaintiff alleges that charging for "assistance services" violates WAC 284-30-750.  ECF No. 1 at 6-7 ¶ 22.  But as previously discussed, such services are not insurance and are not required to be submitted to the Insurance Commissioner for approval.  Further, Plaintiff does not allege that she was charged a fee in excess of the usual amount charged to similarly situated customers.  Lastly, WAC 284-30-750 only requires the insurance producer to provide notice to the insured of the charges and the amount or basis for the charges.  The Princess booking process provided notice that there was a charge for the "assistance services."  *See* ECF No. 19-1.

The Court finds that Plaintiff has not alleged a violation of WAC 284-30-750.

### 2. *RCW 48.17.270*

Defendants assert that Plaintiff has not plausibly a violation of RCW 48.17.270.  ECF No. 18 at 15-16.  Under RCW 48.17.270, "[i]f the compensation received by an insurance producer who is *dealing directly with the insured* includes a fee, for each policy, the insurance producer must disclose in writing to the insured" information including "[t]he full amount of the fee paid by the insured" and "[t]he full amount of any commission paid to the insurance producer by the insurer."  RCW 48.17.270(3) (emphasis added).  Plaintiff does not allege that she dealt directly with Defendants.  Rather, she alleges that she dealt with non-

party Princess.  ECF No. 1 at 8, 14 ¶¶ 28, 40.  Thus, RCW 48.17.270 is not applicable.

The Court finds that Plaintiff has not alleged a violation of RCW 48.17.270.

*3.  RCW 48.19.040*

Defendants assert that Plaintiff has not plausibly a violation of RCW 48.19.040.  ECF No. 18 at 16.  Under RCW 48.19.040(1), "[e]very insurer or rating organization shall, before using, file with the commissioner every classifications manual, manual of rules and rates, rating plan, rating schedule, minimum rate, class rate, and rating rule, and every modification of any of the foregoing which it proposes."  As detailed above, the Princess Vacation Protection plan's "assistance services" are not insurance under RCW 48.01.250(2) and thus are not subject to the Insurance Code, including RCW 48.19.040.

The Court finds that Plaintiff has not alleged a violation of RCW 48.19.040.

*4.  RCW 48.18.180*

Defendants assert that Plaintiff has not plausibly alleged a violation of RCW 48.18.180.  ECF No. 18 at 16-17.  Under RCW 48.18.180(1) "[t]he premium stated in the policy shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof."  "No insurer or its officer, employee, appointed insurance producer, or other representative shall charge or receive any fee, compensation, or consideration for

insurance which is not included in the premium specified in the policy."  RCW

48.18.180(2).  Again, as detailed above, the Princess Vacation Protection plan's

"assistance services" are not insurance under RCW 48.01.250(2).  Further, RCW

48.18.180 does not require fees and charges to be itemized or separately stated.

The Court finds that Plaintiff has not alleged a violation of RCW 48.18.180.

### E.  Whether Plaintiff Has Plausibly Alleged A Common Law CPA Claim

Defendants assert that Plaintiff has also failed to allege a CPA claim based

on common law unfair or deceptive conduct for two reasons.  ECF No. 18 at 18.

First, "without a stand-in statute, Plaintiff's CPA claim is based on (1) alleged

misrepresentations regarding Princess's Vacation Protection plans that simply do

not exist, and (2) a 'failure' to offer insurance-only packages according to

Plaintiff's preferences or to itemize the price of each service in her Vacation

Protection plan."  *Id.*  Second, "Plaintiff fails to allege causation and injury

because she paid no more than the price offered and received exactly the services

she bargained for."  *Id.*

### 1.  Alleged misrepresentations

Defendants contend that Plaintiff failed to plausibly allege unfair or

deceptive conduct under the CPA.  ECF No. 18 at 18-22.  "To prove. . . a practice

is an unfair or deceptive act, a claimant need not show intent to deceive or defraud

on the part of the seller, only that the practice had the capacity to deceive a

1    substantial portion of the public." *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d

2    818, 824 (Wash. Ct. App. 2001). "Deception exists 'if there is a representation,

3    omission or practice that is likely to mislead' a reasonable consumer." *Panag*, 204

4    P.3d at 895 (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n,* 785 F.2d 1431,

5    1435 (9th Cir.1986)). "[A]n act or practice can be unfair without being

6    deceptive[.]" *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

7    To prevail on such a theory, a plaintiff must establish that the act or practice

8    "causes or is likely to cause substantial injury to consumers which is not

9    reasonably avoidable by consumers themselves and not outweighed by

10   countervailing benefits." *Id.* (citation and quotation marks omitted).

11         Plaintiff alleges that the Princess Vacation Protection plan was unfair or

12   deceptive because Defendants misrepresented the Vacation Protection plans as

13   solely an insurance product and that the prices were solely for insurance. *See* ECF

14   No. 1 at 2-3, 14, 19 ¶¶ 4, 42, 56(k). However, this allegation is contradicted by the

15   Princess webpages. "The court need not . . . accept as true allegations that

16   contradict matters properly subject to judicial notice or by exhibit." *Sprewell v.*

17   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on*

18   *denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct. for*

19   *Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987)). "Nor is the court required

20   to accept as true allegations that are merely conclusory, unwarranted deductions of

1    fact, or unreasonable inferences." *Id.* (citing *Clegg v. Cult Awareness Network*, 18

2    F.3d 752, 754–55 (9th Cir. 1994)).

3         On the checkout screen, below the Princess Vacation Protection plan, the

4    webpage states, "Enjoy peace of mind with travel protection that lets you cancel

5    for any reason and reimburses for trip interruption and more." ECF No. 1 at 8 ¶

6    28. This webpage includes details of the benefits included in the Princess Vacation

7    Protection plan, including 24/7 Worldwide Travel Assistance Services, which are

8    listed as "non-insurance" services. *Id.* at 9-11 ¶¶ 30, 32; *see also* ECF No. 19-1.

9    Further, this page includes links to the Premium Plan and Standard Plan. *See* ECF

10   No. 19-2; ECF No. 19-3. In these plan descriptions, travel assistance is listed

11   among other "non-insurance services." ECF No. 19-2 at 3; ECF No. 19-3 at 3.

12        While Plaintiff claims that she "was not aware of any non-insurance fees in

13   addition to the premium," ECF No. 1 at 15 ¶ 45, the test for whether conduct is

14   unfair or deceptive under the CPA is not whether an individual plaintiff was

15   deceived, but whether a reasonable consumer is likely to be deceived. *Panag*, 204

16   P.3d at 895. Based on the actual language of the Princess webpages, a reasonable

17   consumer is not likely to be deceived that they were purchasing only insurance.

18        Plaintiff also alleges that Defendants engaged in unfair or deceptive conduct

19   by not itemizing prices for insurance and non-insurance services. ECF No. 1 at 20

20   ¶ 61. It is not unfair or deceptive to offer and disclose a travel protection plan and

the charge for such a plan. *See Johnson v. Countrywide Home Loans, Inc.*, No. C09-5217, 2010 WL 456902, at * (W.D. Wash. Feb. 1, 2010), *aff'd,* 434 F. App'x 693 (9th Cir. 2011) ("It can hardly be an unfair or deceptive practice to disclose and charge a jumbo fee on a jumbo loan.").

Lastly, Plaintiff alleges that Defendants engaged in unfair or deceptive conduct because the cost of the non-insurance portion of the plan outweighs its value and that she would have declined to purchase the non-insurance portion of the Vacation Protection plan if possible. ECF No. 1 at 4, 15-16 ¶¶ 9, 47. Plaintiff's views regarding the value of portions of the Vacation Protection plan or her desire to purchase only certain portions of the plan does not establish a CPA claim. *Cole v. Keystone RV Co.*, No. C18-5182, 2021 WL 3111452, at *5 (W.D. Wash. July 22, 2021), *aff'd,* No. 21-35701, 2022 WL 4234958 (9th Cir. Sept. 14, 2022) ("At its root, [p]laintiffs' argument is that [defendant] did not disclose the information to them in their preferred method, which does not itself constitute a deceptive act under the CPA.").

In sum, the Court finds that Plaintiff has not plausibly alleged unfair or deceptive conduct under the CPA.

### 2. Injury

Defendants assert that Plaintiff has failed to plausibly allege injury to her business or property. ECF No. 18 at 22. Plaintiff counters that this is a case of

Defendants illegally and/or unfairly assessing a surcharge above what they were alleged to charge.  ECF No. 24 at 19-21.

Plaintiff points to *Elgindy v. AGA Serv. Co.*, No. 20-CV-6304, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) to support her argument.  In *Elgindy*, the court found that plaintiffs had established injury-in-fact by alleging overpayment in that they "paid specific amounts of money that they would not have paid if [d]efendants had complied with the law, had not bundled the fees with the premiums, or had not hidden the existence of the fees." *Id.* at *5 (citation and quotation marks omitted). The court also found:

> As to their theory that the fees themselves are unlawful or unfair, [p]laintiffs contend that if [d]efendants followed the laws and regulations, they would not be charging such fees. . . . Likewise, as to their theory that the fees were not properly disclosed, [p]laintiffs contend that if [d]efendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees. . . . On their face, these allegations appear to allege an economic injury.

*Id.* (citations, alteration, and quotation marks omitted).

The court in *Elgindy* rejected an argument by defendants that plaintiffs got what they paid for based on *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), in which the Ninth Circuit followed the standard set forth by the California Supreme Court.  *Id.* (noting that defendants' "argument makes a great deal of sense, and the Court might adopt it if there were no law to the contrary").  In sum, Plaintiff's emphasis on *Elgindy* is misplaced, as *Elgindy* was addressing California law.

ORDER - 26

Here, Plaintiff paid for and received a Travel Protection plan. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("The economic injury is calculated as the difference in value between what was bargained for and what was received.") (citation and quotation marks omitted). Thus, the Court finds that Plaintiff has not plausibly alleged an injury to her business or property.

In conclusion, the Court finds that Plaintiff has not plausibly alleged a common law CPA claim.

### F. Whether Plaintiff Has Plausibly Alleged A Claim For Breach Of The Duty Of Good Faith

Defendants assert that Plaintiff has not alleged either a common law good faith and fair dealing claim or an insurance bad faith claim. ECF No. 18 at 23.

"Under Washington law, '[t]here is in every contract an implied duty of good faith and fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (quoting *Badgett v. Sec. State Bank,* 807 P.2d 356, 360 (Wash. 1991)). This duty "requires only that the parties perform in good faith the obligations imposed by their agreement." *Badgett*, 807 P.2d at 360 (citation omitted). "Thus, the duty arises only in connection with terms agreed to by the parties." *Id.* (citations omitted).

Plaintiff does not allege that a contract existed between herself and Defendants at the time that the alleged violation occurred – during the Princess

checkout process.  Thus, Defendants did not yet have a duty to perform in good faith the obligations imposed in their agreement.  Nor does Plaintiff point to any specific contact provision where Defendants failed to act in good faith.

The Court finds that Plaintiff has not alleged a common law claim for breach of duty of good faith and fair dealing.[2]

### G. Leave to Amend

Plaintiff asks the Court for leave to amend any defects the Court identifies. ECF No. 24 at 25.  "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).  "A district court does not err in denying leave to amend where the

---

[2] Alternatively, Defendants request that the Court dismiss the case under the primary jurisdiction doctrine.  ECF No. 18 at 25-26.  Because the Court finds that Plaintiff has failed to plead a claim under Federal Rule of Civil Procedure 12(b)(6), the Court does not address this alternative argument.  For the same reason, the Court does not address Defendants' argument that Plaintiff's claims are limited to the Princess Vacation Protection plan she purchased.  ECF No. 18 at 26.

amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 659 (9th Cir. 1992) (citation omitted). Plaintiff did not offer any facts in her briefing or at the hearing which would allow the Court to believe that she could possibly cure the deficiencies described in this Order. Plaintiff's own Complaint, as well as the exhibits that Plaintiff acknowledged she had no reason to challenge, belie her claims. Further, Plaintiff has not pointed to any statutes or regulations that support her claims. Therefore, the Court finds amendment is futile and denies Plaintiff's request for leave to amend.

Accordingly, **IT IS ORDERED**:

1.      Defendants' Motion to Dismiss, **ECF No. 18**, is **GRANTED**.

2.      Defendants' Request for Judicial Notice, **ECF No. 19**, is **GRANTED IN PART**.

3.      All claims are **DISMISSED with prejudice**.

4.      All pending motions, if any, are **DENIED as moot**.

5.      All pending dates and deadlines are **STRICKEN**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, **enter judgment**, provide copies to the parties, and **CLOSE** the file.

DATED January 15, 2025.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE